UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of:<br><br>EDUARDO FUENTES CELESTRIN,<br>Applicant,<br><br>Pursuant to 28 U.S.C. Section 1782 for Judicial Assistance in Obtaining Evidence for Use in a Foreign and International Proceeding | Case No.: 25-mc-2185-SBC<br><br>**REPORT AND RECOMMENDATION TO DENY EX PARTE APPLICATION FOR JUDICIAL ASSISTANCE IN OBTAINING EVIDENCE FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 [DKT. NO. 1]** |

This matter arises out of an Ex Parte Application for Judicial Assistance in Obtaining Evidence for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 filed by Applicant Eduardo Fuentes Celestrin ("Fuentes"). (Dkt. No. 1.) Fuentes seeks discovery from Respondent Simon Levy Dabbah ("Levy"), who resides in this judicial district, in connection with an anticipated civil lawsuit in Mexico by Fuentes against Levy for defamation and other related claims. (*Id.*)

This Report and Recommendation is submitted to Chief United States District Judge Cynthia A. Bashant pursuant to 28 U.S.C. § 636(b).[1] For the reasons set forth below, the Court **RECOMMENDS** that the application be **DENIED**.

## I. BACKGROUND

This § 1782 application is the latest tangle in an acrimonious relationship between Fuentes and Levy.

### A. Fuentes' Factual Allegations

According to the application, Fuentes is an attorney in Mexico and has been practicing law for over forty years in civil and commercial litigation as well as criminal defense. (Appl. 2, Dkt. No. 1; Fuentes Decl. ¶ 2, Dkt. No. 1-1.)[2] Fuentes is the founding partner of the Eduardo Fuentes Abogados Asociados S.C. law firm. (Fuentes Decl. ¶ 2, Dkt. No. 1-1.) He "maintains longstanding professional relationships in the United States where he has represented or advised Mexican clients on cross-border matters involving both Mexican and United States judicial systems." (Appl. 2, Dkt. No. 1.) Fuentes contends that for approximately three years, since early 2022, Levy has authored and published numerous defamatory statements about him on X (formerly known as Twitter), using the account handle @SimonLevyMx, which has 326,136 followers. (Appl. 3, Dkt. No. 1; Fuentes Decl. ¶ 14, Dkt. No. 1-1.) The allegedly defamatory posts include the following:

///

///

---

[1] A Report and Recommendation is required because applications for discovery under 28 U.S.C. § 1782 are dispositive matters for which a magistrate judge may not render a final decision absent consent of all parties to the magistrate judge's jurisdiction. *See CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 807-08 (9th Cir. 2022).

[2] Page citations to the case docket are to the page numbers affixed by the Court's Case Management/Electronic Case Filing system ("CM/ECF").

Post dated June 28, 2025 (containing a picture of Fuentes walking with a colleague):

*When you see this subject on the left side of the picture in Polanco, in CDMX [Mexico City] in restaurants. Be careful: His name is Eduardo Fuentes Celestrin. He is one of the most dangerous assassins in Mexico and he dresses up as a criminal attorney. And he is the attorney of Emilio Lozoya.*[3]

(Fuentes Decl. ¶ 15, Dkt. No. 1-1; *id.* Ex. B at 9, Dkt. No. 1-2.)

Post dated June 30, 2025 (containing a picture of Fuentes' face):

*This is one of the most corrupt and criminal men in Mexico: Eduardo Fuentes Celestrin.*

(Fuentes Decl. ¶ 15, Dkt. No. 1-1; *id.* Ex. B at 9, Dkt. No. 1-2.)

Post dated June 30, 2025:

*11 questions for Morena's untouchable corrupt lawyer: Eduardo Fuentes Celestrin. In the Mexico of sophisticated impunity, there are names that operate in the darkness of power while justice pretends to be blind. One of them is Eduardo Fuentes Celestrín — a lawyer, operator, and architect of shady deals that link the political class, the narco, and dirty money. Fuentes Celestrin is not an ordinary attorney. He is the facilitator of impunity for Morena, the individual who conducts behind-the-scenes negotiations to secure legal protection for key figures such as Emilio Lozoya and Billy Álvarez. He has made use of legal and corporate structures to launder millions of dollars derived from organized crime and from political operators in the south of the country, and to act covertly against defenseless women, such as Mrs. Alejandra Cuevas Morán, who was unjustly imprisoned in Mexico.*

(Fuentes Decl. ¶ 15, Dkt. No. 1-1; *id.* Ex. C at 3-4, Dkt. No. 1-3.)

Post dated August 17, 2025 (containing a picture of Fuentes):

*This is the narco-lawyer Eduardo Fuentes Celestrin. Look how his violence changes when he sees that he is being recorded.*

---

[3] The posts, which were originally published in Spanish, have been translated to English by or on behalf of Fuentes.

(Fuentes Decl. ¶ 15, Dkt. No. 1-1; *id.* Ex. B at 21, Dkt. No. 1-2.)

Post dated October 8, 2025 (containing a video of Fuentes):

> *Do you already know Morena's favorite attorney — the drug-trafficking lawyer of Emilio Lozoya and the boss of @SanjuanaNews? Do @ClaraBrugadaM and @mauriciotabe know that he maintains offices without proper land-use authorization at Lafontaine 332 and that he has allegedly ordered the assassination of at least five people?*

(Fuentes Decl. ¶ 15, Dkt. No. 1-1; *id.* Ex. B at 19, Dkt. No. 1-2.) Fuentes states that the above examples "represent a small fraction of the total defamatory publications by Levy" against him. (Appl. 5, Dkt. No. 1.)

Fuentes maintains that these statements are libelous and "unequivocally false." (Fuentes Decl. ¶ 16, Dkt. No. 1-1.) He claims that he has been required to "defend [his] honor and reputation against these social media posts when questioned by family members, colleagues, [and] potential and current clients." (*Id.* ¶ 17.) He also states that he has been financially impacted by these posts because he has lost both business from prospective clients and client referrals from other attorneys. (*Id.*)

Fuentes believes the motive behind Levy's defamation campaign against him is "driven by personal animus arising from Applicant's successful representation of a separate client in obtaining a USD $1,453.197.50 civil judgment" against Levy in Mexico (the "Mexican judgment"). (Appl. 2, Dkt. No. 1.)[4] Following collection efforts in Mexico, approximately $500,000.00 remains outstanding on the Mexican judgment. (*Id.*; Fuentes Decl. ¶ 5, Dkt. No. 1-1.) Fuentes, who is not licensed to practice law in the United States,

---

[4] Although not evident in the original application, subsequent filings have revealed that the "separate client" appears to be Fuentes' sister-in-law, Emma Yolanda Santos González ("Santos"), who is represented in the United States by Fuentes' counsel in this action, Martensen Wright PC. (*See* Levy Decl. ¶ 4, Dkt. No. 11-1 (attesting that Santos is Fuentes' sister-in-law); *see also* Resp. to Supp. Br. 3 & Ex. C, Dkt. Nos. 27 & 27-1 (confirming that Martensen Wright PC has appeared in Levy's bankruptcy proceeding on behalf of Santos).)

referred his client (i.e., his sister-in-law) to counsel in the United States to proceed with collection efforts against Levy. (Appl. 3, Dkt. No. 1.) The Mexican judgment was domesticated in Florida on December 13, 2023. (Fuentes Decl. ¶ 6, Dkt. No. 1-1.) After it was determined that Levy lives and has assets in San Diego, California, the Florida judgment was domesticated in San Diego Superior Court. (*Id.* ¶ 7.) At the time of the filing of the § 1782 application, collection efforts were underway in San Diego. (*Id.* ¶ 8.) Levy defended against the collection efforts and paying the judgment. (*Id.*) Fuentes alleges that Levy is "wanted criminally by the Mexican authorities and there is an Interpol arrest warrant for his capture." (*Id.* ¶ 10.)[5]

Fuentes has retained his own law firm to represent him in a lawsuit he intends to bring against Levy in Mexico for defamation and other related claims. (Appl. 4, Dkt. No. 1.)[6] Fuentes contends that Levy's defamatory statements constitute libel under Mexican law "because they are false, their implications are false[,] and they have caused damage" to his image and reputation. (*Id.*) He intends to file a lawsuit for libel pursuant to Article 1910 of the Civil Code for Mexico City. (Fuentes Decl. ¶ 19, Dkt. No. 1-1.)[7]

---

[5] Fuentes states that "[a]side from providing the Court with context and background, the Mexican judgment, and subsequent collection efforts in the U.S., is unrelated and has no bearing on" this application. (Appl. 3, Dkt. No. 1.)

[6] In his declaration, Fuentes attests that he has retained the law firms of Osorio Internacional, P.A. and Martensen Wright PC to represent him in a defamation action against Levy in Mexico. (Fuentes Decl. ¶ 3, Dkt. No. 1-1.) That statement appears to be erroneous, however, as it contradicts his application, which states that he has retained his own law firm to represent him in a Mexican defamation action. (Appl. 4, Dkt. No. 1; *see also* Velasco Decl. ¶ 3, Dkt. No. 1-4 (attesting that Fuentes' firm represents Fuentes in a contemplated lawsuit against Levy in Mexican civil court).) Both Osorio Internacional, P.A. and Martensen Wright PC are in the United States and are representing Fuentes in *this* action in relation to his § 1782 application. (Appl. 1, Dkt. No. 1.)

[7] According to Fuentes' counsel, Article 1910 provides that "[a]nyone who, acting unlawfully or against good morals, causes harm to another is obliged to repair it, unless it

**B. <u>Levy's Factual Allegations</u>**

Levy, the discovery target, is licensed as an attorney in Mexico. (Levy Decl. ¶ 2, Dkt. No. 11-1.) He previously resided in Mexico City and has worked for more than two decades in urban development, academic research, and public policy. (*Id.*) He served in the Mexican government for almost ten years, first in the Government of Mexico City and later as the Federal Deputy Minister of Tourism. (*Id.* ¶ 3.) Levy's public service made him a highly visible and well-known figure. (*Id.*) Levy relocated to the United States in 2021 after "years of harassment and irregular legal actions" against him in Mexico by Fuentes and his sister-in-law, Santos. (*Id.* ¶ 4.) He became a United States citizen in 2020 and no longer travels to Mexico City for fear of his personal safety. (*Id.* ¶ 5.)

In 2013, Levy entered a construction project with Santos and her then-husband to build a four-unit residential building on their property in Mexico City. (*Id.* ¶ 6.) Levy financed the project and oversaw construction. (*Id.*) He owned two condominium units in the building with a fair market value of more than $9 million. (*Id.*) Both Levy's family and Santos lived at the property. (*Id.*) Levy claims that Santos refused to title Levy's two units to him and appointed her brother-in-law, Fuentes, as her representative. (*Id.* ¶ 7.) In 2016, Fuentes arrived at the property claiming control, broke the front door, assaulted Levy, and refused to recognize the area that Levy had purchased. (*Id.*) Levy says that in 2017, he was forced to sign a mediation agreement under coercion from Fuentes; Fuentes had demanded new construction and threatened to block condominium registration. (*Id.* ¶ 8.) Beginning in 2017, Fuentes built structures without permits on the property, using Levy's construction funds. (*Id.* ¶ 10.)

Levy alleges that his three-year-old son was thrown from a height of 6.5 meters (approximately 21 feet) by a worker at the property on May 1, 2020. (*Id.* ¶ 11.) Levy's son sustained a fractured skull, and was in a coma and hospitalized for ten days. (*Id.*; *see also*

---

can be proven that the damage was caused as a result of the victim's fault or inexcusable negligence." (Velasco Decl. ¶ 5, Dkt. No. 1-4.)

*id.* Ex. 1 at 12, Dkt. No. 11-1 [photograph of child in hospital].) Levy states that his son identified Santos as responsible for "orchestrating the act." (*Id.* Ex. 2 at 15-17, Dkt. No. 11-1 [child victim statement to criminal prosecutors dated July 26, 2022]). Thereafter, Santos and Fuentes started blasting loud music at the property until early in the morning, shouted at Levy's children, and constantly provoked Levy's family. (*Id.* ¶ 12.) Levy asserts that Fuentes then distributed a heavily edited video showing Levy striking a door to national media outlets, causing Levy substantial reputational harm. (*Id.* ¶¶ 13-14.) Levy further states that Fuentes manufactured unfounded criminal complaints against him, alleging death threats, damage to property, and illegal construction. (*Id.* ¶ 17.) These accusations have not been upheld. (*Id.* ¶ 18.)

When Levy was no longer physically in Mexico, Fuentes filed a lawsuit against him on Santos' behalf alleging "a completely fabricated debt of approximately $1.5 million dollars." (*Id.* ¶ 19.) The documents supporting the alleged debt contain a forgery of Levy's signature. (*Id.*) The Mexican court issued a judgment against Levy for the entire $1.5 million "through irregular procedural treatment" in the case. (*Id.* ¶ 20.) Following the judgment, Fuentes and Santos commissioned a "highly irregular and fraudulent appraisal" of Levy's two condo units which valued them at only $800,000 even though the real market value exceeded $9 million. (*Id.* ¶ 21.) Levy alleges that the undervaluation was intended to enable a quick forced sale which occurred in Levy's absence from Mexico. (*Id.*) Fuentes and Santos domesticated the remainder of the Mexican judgment in Florida, and then in California. (*Id.* ¶ 22.) There is currently a sheriff's levy and motion for sale of Levy's San Diego home to satisfy the judgment. (*Id.*)

Levy contends that Fuentes' § 1782 application is "not a legitimate request for documents and information" but is part of a larger effort to intimidate and harass him. (*Id.* ¶ 27.) He believes that Fuentes is attempting to "intimidate me and get me to stop assisting the U.S. administration and putting the spotlight on corrupt persons and politicians in Mexico." (*Id.* ¶ 29.) He explains that over the years, he has spoken out publicly about "various important persons," including Fuentes' client, Emilio Lozoya Austin, who is

under criminal indictment for corruption that occurred while he was the Chief Executive Officer of Pemex from 2012 to 2016. (*Id.* ¶ 30.) Levy says that he has also spoken publicly about Andres Manuel Lopez Beltran, the son of Mexico's former president, who was reputed to be involved in various corruption schemes. (*Id.* ¶ 31.) Levy attests that Lopez and approximately fifty other prominent Mexican persons and politicians had their visas revoked by the Trump administration in the United States. (*Id.*) He says that "[i]t is no coincidence that Mr. Fuentes makes his [§ 1782] request now" and notes that Fuentes has not initiated any defamation proceedings against him despite Fuentes's claim that he, Levy, has been making defamatory statements about him for many years. (*Id.* ¶ 32.)

**C. <u>Discovery Requests</u>**

Fuentes seeks discovery from Levy "related to the identity, source, scope, and dissemination of the defamatory publications." (Appl. 6, Dkt. No. 1.) He wishes to depose Levy to confirm that Levy owns the X handle at issue and authored and published the allegedly defamatory statements, and not a third party pretending to be Levy. (*Id.*; *see also id.* Ex. F at 2, Dkt. No. 1-6 [proposed deposition subpoena].)

In addition to Levy's deposition, Fuentes seeks to subpoena the following documents dated January 1, 2022 through the present date:

- All documents and communications relating to Fuentes.
- All social media posts (including on X, Facebook, Snapchat, Instagram, LinkedIn, Reddit, Discord, and TikTok) by Levy relating to Fuentes.
- All documents and communications relating to Fuentes' law practice in Mexico, Fuentes' staff or employees, or Fuentes' clients.
- Documents relating to the ownership and registration of @SimonLevyMx on X.
- Communications between @SimonLevyMx and third parties on X regarding Fuentes.
- Documents and communications exchanged with third parties regarding social media posts about Fuentes and/or Fuentes.

- Documents and communications reflecting any research or investigation, undertaken by Levy or third parties at Levy's direction, to substantiate, justify, or corroborate the content in Levy's social media posts about Fuentes.
- Documents and communications reflecting draft or unpublished social media posts about Fuentes.
- Documents sufficient to identify all social media handles used by Levy.
- Documents sufficient to identify all email addresses from which Levy authors or receives emails.
- Documents sufficient to identify all telephone numbers used by Levy.
- Documents sufficient to identify the location of all computers, tablets, personal cell phones, and other electronic devices used by Levy to post on social media.

(*Id.* Ex. F at 2, Dkt. No. 1-6.)

**D. <u>Procedural Background</u>**

Fuentes filed the § 1782 application currently before the Court on October 28, 2025. (Dkt. No. 1.) On December 12, 2025, Levy filed an opposition to the application and objections to evidence submitted by Fuentes in support of the application. (Dkt. Nos. 11, 12.)[8] Fuentes filed a reply on January 30, 2026. (Dkt. No. 17.)

---

[8] Levy makes general objections to portions of the declarations submitted by Fuentes and Luis Miguel Velasco, an attorney with Fuentes' firm. (Dkt. No. 12.) The Court overrules these objections as both declarations are based on personal knowledge and have been relied on by the Court solely for the purpose of setting forth Fuentes' contentions. Levy also objects to documents translated from Spanish to English as constituting uncertified and unauthenticated translations. (*Id.* at 3, 4.) He does not, however, assert that the translations are inaccurate. The Court finds the translations sufficient for purposes of ruling on the current application and thus also overrules these objections.

On February 3, 2026, Levy filed a Notice of Bankruptcy Filing and Stay of Proceedings, indicating that he had filed a bankruptcy case under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California on January 22, 2026. (Dkt. No. 20.)[9] This Court issued an order staying this matter pending the conclusion of Levy's bankruptcy proceedings pursuant to the automatic stay provisions of 11 U.S.C. § 362(a). (Dkt. No. 21.) On March 16, 2026, Fuentes filed a Notice of Bankruptcy Court Order Lifting Automatic Stay. (Dkt. No. 22.) Attached to the Notice was an Order on Motion for Relief from Automatic Stay entered by the bankruptcy court on March 12, 2026, stating, "The automatic stay is lifted to allow [Fuentes] to seek relief under 28 U.S.C. § 1782 in the United States District Court for the Southern District of California, in case no. 25-mc-02185-SBC." (*Id.* at 11.) Pursuant to the bankruptcy court's order, this Court lifted the automatic stay in this matter. (Dkt. No. 24.) The Court granted Levy leave to file a supplemental brief, which was filed on April 3, 2026. (Dkt. No. 25.) At the Court's request, Fuentes filed a response to the supplemental brief on July 2, 2026. (Dkt. No. 27.)

## II. LEGAL STANDARD

28 U.S.C. § 1782 "authorizes, but does not require," federal district courts to order discovery for use in a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). Under § 1782, district courts may "authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (quoting 28 U.S.C. § 1782(a)).

---

[9] The case is captioned *In Re Simon Levy*, Case No. 26-00161-CL13 (Bankr. S.D. Cal.).

Even if an applicant satisfies these statutory requirements, "the district court still retains substantial discretion to permit or deny the requested discovery." *Id.* at 926 (citing *Intel*, 542 U.S. at 264-65); *see also In re Ex Parte Application of Qualcomm, Inc.*, 162 F. Supp. 3d 1029, 1035 (N.D. Cal. 2016) ("[S]imply because a court has the authority under Section 1782 to grant an application does not mean that it is required to do so."). In exercising its discretion, the court should consider "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding;' (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;' (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;' and (4) whether the discovery requests are 'unduly intrusive or burdensome.'" *CPC Pat. Techs. Pty Ltd. v. Apple Inc.*, 119 F.4th 1126, 1129 (9th Cir. 2024) (quoting *Intel*, 542 U.S. at 264-65). These factors are sometimes described as the "*Intel*" factors. *Id.* In addition, the Ninth Circuit has indicated that "the district court should deny the request if the district court 'suspects that the request is a fishing expedition or a vehicle for harassment[.]'" *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) (citation modified).

## III. DISCUSSION

### A. <u>Statutory Requirements</u>

Here, the first and third statutory requirements are met, and Levy does not contend otherwise. The parties dispute whether the application satisfies the second statutory requirement—that the discovery be "for use in a proceeding in a foreign or international tribunal."

#### 1. "For use" in a foreign tribunal

##### a. Legal standard

"Discovery is permitted under 28 U.S.C. § 1782 if it is intended 'for use in a proceeding in a foreign or international tribunal.'" *Khrapunov*, 931 F.3d at 925 (quoting

28 U.S.C. § 1782(a)). In *Intel*, the Supreme Court explained that a foreign proceeding need not be "pending" or even "imminent" when discovery is sought pursuant to § 1782. *Intel*, 542 U.S. at 258-59. So long as a dispositive ruling in a foreign proceeding is "within reasonable contemplation," the second statutory requirement is satisfied. *See id.* at 259 ("It is not necessary . . . for the [adjudicative] proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding.") (citation omitted). The "for use" requirement focuses on the practical ability of an applicant to place a beneficial document before a foreign tribunal. *In re Pioneer Corp. for an Ord. Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, Case No. MC 18-0037 UA (SS), 2018 WL 2146412, at *6 (C.D. Cal. May 9, 2018) (citing *In re Sargeant*, 278 F. Supp. 3d 814, 822 (S.D.N.Y. 2015)). "[E]ven if discovery is 'useful' to an applicant, the discovery will not be deemed 'for use' in a foreign proceeding unless the applicant can introduce the information as evidence in that proceeding." *Id.*

**b. Parties' arguments**

Fuentes contends that the "for use" requirement is satisfied because the discovery he seeks through the § 1782 application will be used to draft a complaint for defamation in Mexico against Levy. (Appl. 8, Dkt. No. 1.) He maintains that Mexican procedure requires that evidence supporting one's claim be attached to the lawsuit, and argues he has no other way to obtain the evidence he needs. (*Id.* at 5.) He also claims that he has hired his law firm to represent him. (*Id.*) Luis Miguel Velasco, an attorney with Fuentes' firm, attests:

> The requirement to assert a claim for moral damages is to demonstrate before a Mexican Civil Court that the defendant caused damage to the claimant's image or reputation.[10]

---

[10] The parties agree that the closest equivalent to a defamation action under Mexican law is a civil cause of action for "daño moral," or "moral damages," governed primarily by Article 1916 of the Federal Civil Code and similar provisions in the state civil codes. (Velasco Decl. ¶ 7, Dkt. No. 1-4; Torres Decl. ¶ 9, Dkt. No. 11-2.) According to attorney Pedro Torres, who submitted a declaration in support of Levy's opposition, article 1916 provides, in relevant part, that "[m]oral damages are understood as the harm suffered by a

> In Mexico, a claimant's suit should be accompanied by supporting evidence when it is filed with the Mexican court. See Civil Procedure Code for Mexico City, Article 255.
>
> In the contemplated Mexican proceeding, supporting evidence could include relevant copies of the libelous statements, testimonial transcripts, pictures, admissions, and other types of documents, such as documentation or testimony obtained from Mr. Levy.
>
> The Mexican court system and relevant laws do not provide for depositions and do not contain any similar evidence-gathering procedure. Mr. Fuentes would not be able to take Mr. Levy's deposition in Mexico and would not be able to obtain documents or "electronically stored information" in Mr. Levy's possession in the United States.

(Velasco Decl. ¶¶ 8-12, Dkt. No. 1-4.)

In opposition, Levy argues that there is no foreign proceeding underway and no showing that a defamation action is "reasonably contemplated." (Opp'n 12, Dkt. No. 11.) Rather, he contends, Fuentes has simply expressed an intent to use § 1782 discovery to prepare and file a lawsuit in Mexico at some unspecified time in the future. (*Id.*) Levy points out that while Fuentes claims the allegedly defamatory statements have been made multiple times a day for years, Fuentes did not, during those years, file a defamation lawsuit against Levy. (*Id.*) Finally, Levy observes that Fuentes "is hiring himself" to file suit. (*Id.*)

In his reply, Fuentes counters that he intends to "imminently" commence a civil action for moral damages (i.e., defamation) in Mexico, and contends that any delay in filing a lawsuit in Mexico was not in bad faith or dilatory, but rather stemmed from the need to gather United States-based evidence that is "necessary for the intended filing" and unavailable in Mexico. (Reply 2, 4, Dkt. No. 17.)

///

///

---

person in their . . . decorum, honor, reputation, . . . or in the esteem in which they are held by others." (Torres Decl. Ex. 1 at 10-11, Dkt. No. 11-2.)

**c. Discussion**

For the reasons discussed below, Fuentes has not met the "for use" statutory requirement.

"[T]he applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015). "There are not precise contours regarding what constitutes sufficient objective indicia." *Bull Gaming N.V.*, Case No. 24-mc-80207-LJC, 2025 WL 770352, at *5 (N.D. Cal. Mar. 11, 2025) (citation modified). "[I]t is a highly fact-intensive undertaking." *In re Application of Stephen Shefsky for an Ord. to Take Discovery for Use in Foreign Proceedings Under 28 U.S.C. § 1782*, Case No. 2:23-cv-00633-JCM-BNW, 2024 WL 2275125, at *4 (D. Nev. May 20, 2024). A district court must "assess the indicia of whether the contemplated proceedings were within reasonable contemplation at the time the § 1782 application was filed." *Certain Funds, Accts. &/or Inv. Vehicles*, 798 F.3d at 124; *see also Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014) ("[A] 'district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time.'") (citation omitted).

Here, Fuentes submits that the objective and reliable indicia supporting that the filing of his defamation action in Mexico is within reasonable contemplation include (1) his pursuit of discovery under § 1782 from Levy, which he says is needed due to the requirement under Mexican procedure that he attach evidence to his complaint to support his defamation claims, and (2) his retention of counsel to represent him in the Mexican proceedings. (Appl. 8, Dkt. No. 1.) These indicia, however, are neither objective nor reliable.

First, Fuentes has not yet filed his defamation action in Mexico, despite his allegations of defamatory statements by Levy over several years. This raises a question in as to whether Fuentes truly intends to pursue a defamation action against Levy. Fuentes'

insistence that he must attach evidence to the initial complaint upon filing, and cannot file a defamation complaint in Mexico without the requested discovery, does not appear to be substantiated. Fuentes already has evidence supporting his defamation allegations—the copies of Levy's alleged statements that he has attached to his § 1782 application. That the scope of the requested discovery goes far beyond what would reasonably be needed to support Fuentes' defamation claims further reinforces skepticism as to whether a defamation action in Mexico is reasonably contemplated. Simply put, Fuentes has not persuaded the Court that he needs the discovery he seeks from Levy to proceed with his Mexican lawsuit.

Second, Fuentes' retention of his own law firm to represent him does not ensure that a defamation action is reasonably contemplated. As the founder of his law firm and as an attorney with over four decades of experience, Fuentes presumably exercises a large measure of authority and control over the attorney he has "retained" to represent him, Luis Miguel Velasco, a nine-year attorney who has submitted two declarations in support of the § 1782 application. (*See* Velasco Decl., Dkt. No. 1-4; Velasco Supp. Decl., Dkt. No. 17-1.) While it may be somewhat reasonable for Fuentes to rely on the resources of his own law firm in pursuing his § 1782 application and proposed defamation lawsuit, Velasco's statements, including that he is preparing a defamation complaint on Fuentes' behalf, as well as his assessment of Mexican law, may be viewed with some reservation given the circumstances. Additionally, by hiring his own law firm, Fuentes' stakes in actually proceeding with the defamation lawsuit are low, as he likely invested little to no personal time or resources to secure his representation. Therefore, the retention of his own law firm is neither a reliable nor objective indication that the filing of Fuentes' Mexican defamation action is reasonably contemplated.

Finally, the Court cannot ignore what appears to be a highly contentious history between the parties, which Fuentes failed to disclose in his application and apparently does not dispute. *See generally* Reply, Dkt. No. 17. In light of the parties' longstanding acrimonious relationship, Fuentes has not established to the Court's satisfaction that the

requested discovery is truly intended for use in a Mexican defamation action rather than for some improper purpose, such as to harass Levy or to further Fuentes' collection efforts on behalf of his client/sister-in-law, Santos.

Accordingly, the Court concludes that a defamation action against Levy in Mexico is not "within reasonable contemplation," and the "for use" statutory requirement is not met.

**d. Effect of bankruptcy proceeding**

Levy's pending bankruptcy proceeding provides an additional basis for finding that Fuentes has not met the "for use" requirement.

As set forth above, Levy filed for Chapter 13 bankruptcy on February 3, 2026 in the United States Bankruptcy Court, Southern District of California. (Notice of Bankruptcy Case Filing, Dkt. No. 20 at 5.) On March 12, 2026, the bankruptcy court lifted the automatic stay mandated by 11 U.S.C. § 362(a) to allow Fuentes to pursue his § 1782 application in this court. (Order on Motion for Relief from Automatic Stay, *In Re Simon Levy*, Case No. 26-00161-CL13 (Bankr. S.D. Cal. Mar. 12, 2026), Dkt. No. 22 at 5-11.) The court reasoned that "stay relief would allow the § 1782 Action to proceed to conclusion, which will completely resolve the issue of whether the requested discovery is appropriate and warranted." (*Id.* at 9.) The bankruptcy court, however, expressly stated, "But [Fuentes] may not initiate any debt-collection proceeding against [Levy]—either in the United States of America or abroad—without further leave of this court." (*Id.*)

In his supplemental brief, Levy, citing 11 U.S.C. § 362(a)(1), observes that the bankruptcy stay "prevents the initiation or continuance of any proceeding based on a cause of action that arose prior to the bankruptcy filing." (Supp. Br. 2, Dkt. No. 25.) According to the Ninth Circuit:

> The automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations. By halting all collection efforts, the stay affords the debtor time to propose a reorganization plan, or simply to be relieved of the financial pressures that drove him into

> bankruptcy. The automatic stay also assures creditors that the debtor's other creditors are not racing to various courthouses to pursue independent remedies to drain the debtor's assets.
>
> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition. The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case.

*In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000) (citation modified).

"[A § 1782] applicant must be in a 'position to have the [tribunal] consider that evidence' or have some 'means of injecting the evidence into the proceeding' to 'use' the evidence." *In re Pioneer Corp.*, 2018 WL 2146412, at *6 (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2nd Cir. 2017)). In view of the pending bankruptcy proceeding and the bankruptcy court's express order precluding Fuentes from initiating any "debt-collection proceeding" against Levy without further leave of court, Fuentes does not presently have the practical ability to initiate a defamation lawsuit against Levy in Mexico. He is therefore not in the position of having a tribunal in Mexico consider or "use" the evidence he is requesting in his application. If Court were to grant this discovery, there is no indication of when, if ever, the discovery would be "for use" in a foreign proceeding.

Therefore, Levy's pending bankruptcy proceeding provides an additional reason for finding that a defamation action against Levy in Mexico is not "within reasonable contemplation."

**B. <u>Discretionary Factors</u>**

The Court next considers the *Intel* factors. *See Intel*, 542 U.S. at 264-65. As will be discussed below, even if Fuentes met the statutory requirements for § 1782 discovery, the four discretionary *Intel* factors weigh against Fuentes' requested discovery.

///

///

**1. Participation of discovery target in the foreign proceeding**

The first *Intel* factor—whether the person from whom discovery is sought is a participant in the foreign proceeding—suggests that because Levy would be a participant in the Mexican litigation, Fuentes should rely on Mexican discovery procedures to obtain any discovery from Levy. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* at 264. This is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* The *Intel* court further noted that "[i]n contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

Fuentes contends that discovery in Mexico is less comprehensive than United States discovery, and does not provide for depositions or the production of U.S.-based documents. (Appl. 9, Dkt. No. 1.) The Court, however, is not persuaded that Fuentes should be permitted discovery beyond what the procedure in Mexico would provide. While Fuentes argues that there is no "exhaustion" requirement under § 1782 requiring him to exhaust discovery tools provided under Mexican law (*see* Reply 7, Dkt. No. 17), the Court may properly consider that Fuentes has not simply filed his case in Mexico and sought discovery using Mexican discovery procedures. *See, e.g.*, *In re Application of Digitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *4 (W.D. Wash. May 8, 2007) (stating that despite the lack of an exhaustion requirement under § 1782, "there is nevertheless no reason that this Court should overlook Digitechnic's failure to attempt any discovery measures in France in making the discretionary decision now before it"); *In re Rigby*, CASE NO. 13cv0271-MMA (MDD), 2013 U.S. Dist. LEXIS 23251, at *5 (S.D. Cal. Feb. 19, 2013) ("Although § 1782 does not have an 'exhaustion' requirement, the Court is permitted, in deciding how to exercise its discretion, to consider whether the applicant has availed itself of discovery procedures in the foreign forum.").

This factor weighs against granting Fuentes' request for discovery.

**2. Receptivity of foreign tribunal to U.S. judicial assistance**

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. This inquiry focuses on "the utility of the evidence sought and whether the foreign tribunal is likely to receive the evidence." *Qualcomm*, 162 F. Supp. 3d at 1040. Courts may decline to order discovery under § 1782 where "there is reliable evidence that the foreign tribunal would not make any use of the requested material." *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, Case No. 16-mc-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016). But "[i]n the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, courts tend to err on the side of permitting discovery." *Id.* (internal citations omitted).

Levy has submitted a declaration from Pedro Torres, an attorney licensed in Mexico, in support of his opposition. (Torres Decl. ¶ 2, Dkt. No. 11-2.) Torres attests, "It would be unheard of in Mexico for one sided pre-litigation discovery of the sort requested by Mr. Fuentes, and I believe that the Courts of Mexico would not be receptive to evidence obtained in this manner." (*Id.* ¶ 23.) Fuentes, through his Mexican counsel, acknowledges that the Mexican court system does not provide for depositions or the discovery of documents in Levy's possession in the United States. (Velasco Decl. ¶ 11, Dkt. No. 1-4.). But he further asserts that, "However, to be clear, neither are there laws, codes or regulations under Mexican law that indicate that a Mexican court would not be receptive to the documentary and testimonial evidence sought by this Section 1782 Application." (*Id.* ¶ 12.)

On this record, it is unclear whether the Mexican court would be receptive to the evidence obtained. But even if this factor weighs in Fuentes' favor, the other factors provide more than sufficient grounds to support the denial of the application.

///

**3. Circumvention of foreign proof-gathering restrictions**

Under the third *Intel* factor, the court should consider whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65.

"A perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d 894, 899 (N.D. Cal. 2021); *see also Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F. Supp. 2d 45, 54 (D.D.C. 2005) ("The Court is wary of granting discovery under § 1782 when it appears that the party seeking discovery may be using the United States statutes and federal court system to 'jump the gun' on discovery in the underlying foreign suit."). Here, despite having possession of, or the ability to obtain, what appears to have been sufficient evidence to initiate a defamation lawsuit at the time his § 1782 application was filed—copies of allegedly defamatory statements, as well as evidence demonstrating that Levy's alleged statements caused harm to Fuentes' image or reputation, which would not be in Levy's possession but rather in the possession of Fuentes himself or others willing to attest to any harm done to Fuentes' image or reputation—Fuentes failed to even file a complaint and pursue available procedures in Mexico. The Court finds this weighs against granting the § 1782 application.

**4. Intrusiveness and burden of complying with the requests**

The fourth *Intel* factor, the intrusiveness and burden of complying with the requests, (*see Intel*, 542 U.S. at 265), weighs strongly against the application. The proper scope of discovery applicable to a § 1782 application is generally determined by the Federal Rules of Civil Procedure. *In re Komanokai*, Case No. 4:20-mc-80149-KAW, 2020 WL 6684565, at *3 (N.D. Cal. Nov. 12, 2020). Under Rule 26 of the Federal Rules of Civil Procedure, discovery requests must seek information that "is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential

information and appear to be a broad 'fishing expedition' for irrelevant information." *Qualcomm*, 162 F. Supp. 3d at 1043 (citations omitted).

The requests here are patently overbroad under Rule 26(b)(1) and requiring compliance with the requests would put an undue burden on Levy. For example, Fuentes' proposed subpoena seeks all documents and communications relating to Fuentes, all social media posts relating to Fuentes, all documents and communications relating to Fuentes' law practice in Mexico, communications between @SimonLevyMx and third parties on X regarding Fuentes, and documents and communications exchanged with third parties regarding the subject social media posts and/or Fuentes. (*See* Appl. Ex. F at 7-8, Dkt. No. 1-6.) He suggests that such data must be obtained from Levy's "cloud servers, computers, laptops, tablets and cell phones." (Fuentes Decl. ¶ 12, Dkt. No. 1-1.) But Article 1916 of the Federal Civil Code, pertaining to "moral damages" under Mexican law, applies only to those communications "that may cause dishonor, discredit, harm, or expose [a person] to the contempt of someone." (Torres Decl. Ex. 1 at 10, Dkt. No. 11-2.) The requests, as currently phrased, are likely to yield documents not relevant to a potential claim for moral damages due to defamation, and constitute a fishing expedition. And even if some of this discovery might yield some relevant information, the vast scope of these requests is not proportional.

Turning to other proposed document requests, Fuentes has not demonstrated the relevance of Levy's "research or investigation" substantiating the content in his social media posts, his draft or unpublished social media posts, or identification of all social media handles, email addresses, telephone numbers, or electronic devices used by Levy. (*See* Appl. Ex. F at 8-9, Dkt. No. 1-6.) Not only do these requests go far beyond what would be needed to file a complaint for defamation, but they are highly intrusive as they encompass Levy's private communications, personal data, confidential material, and documents unrelated to any legal proceedings. Furthermore, requiring Levy to sit for deposition before litigation has even commenced would be unduly burdensome,

inappropriate, and unfair, particularly during the pendency of bankruptcy proceedings and while Fuentes's sister-in-law is attempting to collect on a judgment against Levy.

Fuentes relies on *In re Hoteles City Express* to support his request for § 1782 discovery from Levy. (Reply 5-6, Dkt. No. 17.) Unlike the applicant in *Hoteles*, however, Fuentes is not seeking to issue a subpoena to a nonparty social media platform for the sole purpose of identifying the owner of an account or page containing allegedly defamatory statements against the applicant. *See In re Hoteles City Express*, Case No. 18-mc-80112-JSC, 2018 U.S. Dist. LEXIS 133906, at *1 (N.D. Cal. Aug. 8, 2018). Rather, Fuentes seeks much more extensive discovery directly from an individual who is the proposed defendant in a contemplated foreign proceeding, against whom he has a significant and highly contentious history. *Hoteles* is distinguishable.

The Court finds that the discovery requests are overly broad and, considering all the other factors weighing against granting the application, the Court declines to cure that defect. *See In re Oasis Focus Fund LP*, Case No.: 3:22-mc-0112-BGS, 2022 WL 17669119, at *14 (S.D. Cal. Dec. 14, 2022) (recommending that § 1782 application be denied rather than modifying or narrowing otherwise overly broad requests where the balance of the statutory and *Intel* factors weighed against granting discovery assistance).

For the reasons discussed above, the Court concludes that even if the "for use" statutory requirement were met, the four discretionary *Intel* factors weigh against granting the requested discovery.

**C. <u>Additional Factor</u>**

According to the Ninth Circuit, "the district court should deny the request if the district court 'suspects that the request is a fishing expedition or a vehicle for harassment[.]'" *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d at 563 (citation modified). Here, considering the significant facts that Fuentes failed to disclose in his application, and which he completely ignores in his reply, including the significant legal history and acrimony between the parties, the Court is concerned that the § 1782 application constitutes a fishing expedition, and thus should be denied.

## IV. CONCLUSION

For the reasons stated above, the Court finds the statutory and discretionary factors weigh against Fuentes' request for § 1782 discovery. Accordingly, **IT IS HEREBY RECOMMENDED** that the Chief District Judge issue an Order:

1. Denying the Ex Parte Application.
2. Directing the Clerk of Court to close the case.

**IT IS ORDERED** that any party may file written objections with the Court and serve a copy on all parties on or before **August 25, 2026**. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **September 8, 2026**. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

Dated: August 11, 2026

Hon. Steve B. Chu
United States Magistrate Judge